IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN M. PERUTO, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | |
| v. | Civil Action No. 15-2166 (JBS/JS) |
| TIMBERTECH LTD, et al., | |
| Defendants. | **OPINION** |

APPEARANCES:

Alessandra Cristina Phillips, Esq.
Michael Coren, Esq.
COHEN, PLACITELLA & ROTH, PC
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
     -and-
Christopher M. Placitella, Esq.
COHEN, PLACITELLA & ROTH, PC
127 Maple Avenue
Red Bank, NJ 07701
     Attorneys for Plaintiffs John M. Peruto and Lori A. Peruto

Lorna A. Dotro, Esq.
Mark K. Silver, Esq.
COUGHLIN DUFFY LLP
350 Mount Kemble Avenue
Morristown, NJ 07962
     -and-
Paul A. Williams, Esq.
Holly P. Smith, Esq.
Molly S. Carella, Esq.
SHOOK, HARDY & BACON L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
     Attorneys for Defendant CPG International LLC

**SIMANDLE, Chief Judge:**

## I.   INTRODUCTION

In this putative class action, Plaintiffs John M. Peruto and Lori A. Peruto contend that Defendants TimberTech Ltd. ("TimberTech") and CPG International LLC ("CPG") (collectively, "Defendants") marketed their TimberTech XLM decking product line ("XLM decking") as a high-quality, low-maintenance, and long-lasting alternative to traditional wooden decking materials. Despite Defendants' marketing and advertising claims, Plaintiffs allege that XLM decking is prone to discoloration and fading soon after installation.

This matter comes before the Court on a motion by Defendant CPG to dismiss and to strike class allegations.[1] [Docket Item 9]. CPG argues that Plaintiffs' Complaint must be dismissed in its entirety for failure to adequately plead claims for breach of implied warranty, breach of express warranty, negligent misrepresentation, unjust enrichment, violation of the New Jersey Consumer Fraud Act ("NJCFA"), and declaratory relief. Principally, CPG argues that the alleged defect on which Plaintiffs' express warranty claim is based is specifically excluded from coverage and that Defendants' marketing statements

---

1 Only CPG has responded to Plaintiffs' Complaint by filing the instant motion to dismiss. No appearance has been entered on behalf of TimberTech. Plaintiffs assert in the Complaint that TimberTech previously manufactured and sold the XLM product, but CPG has done so since 1996. (Compl. ¶ 13.)

are insufficient to create an express warranty. Additionally, CPG argues that Plaintiffs have not adequately alleged an actionable misrepresentation or omission to support a claim under the NJCFA, nor the requisite elements of a negligent misrepresentation claim. Plaintiffs in opposition agree to dismiss their breach of implied warranty and unjust enrichment claims, but maintain that their claims for breach of express warranty, negligent misrepresentation, and violation of the NJCFA are sufficiently pleaded. In the alternative, Plaintiffs request leave to amend.

For the reasons discussed below, the Court will grant in part and deny in part CPG's motion to dismiss. The Court will deny without prejudice CPG's motion to strike class allegations.

## II. BACKGROUND

### A. Facts

The Court accepts as true for purposes of the instant motion the following facts from the Plaintiffs' Complaint. [Docket Item 1].

Defendants designed, manufactured, and sold their synthetic XLM decking product as an alternative to traditional wood decking materials. (Compl. ¶ 1.) Defendants and their sales representatives advertised and marketed XLM as "easier to install, easier to maintain, and longer-lasting than wooden or other composite decking." (Id. ¶ 14.) Plaintiffs allege that

3

they paid a premium price for these attributes, but the product failed to perform as advertised. (Id. ¶ 15.) According to Plaintiffs, Defendants were negligent in the design, testing, and manufacture of XLM decking in a variety of ways, including the use of polyvinyl chloride ("PVC"), a major component in the XLM decking, which led to "substantial color deterioration." (Id. ¶¶ 16-17.) Plaintiffs maintain that Defendants knew that XLM decking was prone to premature wear and discoloration as the result of numerous consumer complaints regarding product performance. (Id. ¶¶ 22-27.) Nevertheless, Defendants failed to cure the problem through warranty procedures or other means. (Id. ¶¶ 26, 27.) Plaintiffs claim that Defendants did not disclose XLM's defects to distributors or customers and continued to sell the product for a premium price. (Id. ¶¶ 22, 24.)

Defendants provided purchasers of the XLM product a Limited 25-Year Residential Warranty ("Limited Warranty") that expressly states the following in pertinent part:

> TimberTech Limited ("TimberTech") warrants to Purchaser that, for a period of twenty five (25) years (Residential) & ten (10) years (Commercial) from the date of the original purchase, residential or commercial as the case may be, (the "Term"), under normal use and service conditions, that: (1) the decking Materials will be free from material defects in workmanship and materials, and will not check, split, splinter, rot or suffer structural damage from termites or fungal decay.

(Id. ¶ 20.)

4

Plaintiffs assert that Defendants, through product brochures, videos and internet marketing, represented that the XLM product was reliable and low-maintenance. (Id. ¶ 31.) Plaintiffs offer the following examples of Defendants' marketing statements regarding the XML decking material:

- "designed to provide years of low-maintenance use and enjoyment"
- "dependable and attractive for years . . ."
- "years of outdoor living pleasure"
- "less work more life"
- "designed to withstand the elements [so] you're not going to have to do the traditional painting and staining you would with a traditional wood deck"
- "is going to get the same consistent, high-quality board-to-board"
- "designed to not rot, wrap or splinter and contain a 25-year warranty."

(Id. ¶ 32.)

Plaintiffs allege that they relied on these statements when purchasing XLM decking. (Id. ¶ 37.) Moreover, Plaintiffs contend that they would not have purchased the product, paid a premium price, or installed it in their property if they knew about the deficiencies in the XLM product prior to purchase. (Id. ¶ 36.)

In May, 2012, Plaintiffs began purchasing the XLM decking for their home in Margate, New Jersey. (Id. ¶¶ 39, 40.) Prior to purchase, Plaintiffs and their contractor J.P Leeds, Jr. Builder, Inc. ("Leeds") researched several decking products and decided to purchase and install XLM due to its "purported

superior weathering and low maintenance properties." (Id. ¶¶ 39, 40.) The decking began to discolor shortly after the final installation. (Id. ¶ 40.) Leeds promptly reported the discoloration to Defendants on Plaintiffs' behalf. (Id. ¶ 41.) Defendants, however, only offered Plaintiffs a treatment solution for the XLM decking's discoloration. (Id. ¶ 43.) Defendants refused to warrant that the treatment solution would permanently correct the problem. (Id.)

**B.   Procedural history**

Plaintiffs filed their seven-count class action complaint against Defendants on February 11, 2015 in the Superior Court of New Jersey, Atlantic County, Law Division. Plaintiffs asserted claims for breach of implied warranty, breach of express warranty, unjust enrichment, negligent misrepresentation, violation of the NJCFA, and declaratory and injunctive relief. On March 25, 2015, CPG removed this action to the District of New Jersey pursuant to 28 U.S.C. §§ 1332(d), 1446, 1453 and the Class Action Fairness Act of 2005. [Docket Item 1]. CPG then filed the instant motion to dismiss. [Docket Item 9.] Plaintiffs filed opposition [Docket Item 21] and CPG filed a reply [Docket Item 22]. In their opposition, Plaintiffs agreed to withdraw

their breach of implied warranty and unjust enrichment claims and an accompanying order will so provide.[2]

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted). While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id. A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face."

---

[2] Accordingly, there is no need to address CPG's arguments as to Plaintiffs' implied warranty and unjust enrichment claims.

Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

In addition, Rule 9(b), Fed. R. Civ. P., imposes a heightened pleading standard on fraud-based claims, requiring a party to "state the circumstances constituting fraud with particularity." Klein v. Gen. Nutrition Companies, Inc., 186 F.3d 338, 344 (3d Cir. 1999). This requirement is intended "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984).

"[A] court should grant a motion to strike class allegations only if the inappropriateness of class treatment is evident from the face of the complaint and from incontrovertible facts." McPeak v. S-L Distribution Co., Civ. 12-348 (RBK/KMW), 2014 WL 4388562, at *4 (D.N.J. Sept. 5, 2014) (citing Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72, 93 n.30 (3d Cir. 2011)).

## IV.  DISCUSSION

In the instant motion to dismiss, CPG argues that Plaintiffs' claims fail as a matter of law. CPG contends that Plaintiffs' breach of express warranty claim fails because the Limited Warranty does not cover the alleged defect and Plaintiffs have not alleged conduct establishing a breach of this warranty. CPG also argues that Plaintiffs cannot rely on Defendants' alleged marketing statements as the basis for an express warranty claim. CPG asserts that Plaintiffs' NJCFA claim must be dismissed because Plaintiffs have not adequately pleaded ascertainable loss, an unlawful misrepresentation or omission, or causation. CPG similarly maintains that Plaintiffs' negligent misrepresentation claim fails because Plaintiffs have not alleged reasonable reliance or a fiduciary relationship. Because Plaintiffs' claim for declaratory relief is derivative of their other claims, CPG argues that this claim should be dismissed as well. CPG also requests that the Court strike Plaintiffs' class allegations due to "insurmountable obstacles to class certification." (Def. Br. [Docket Item 9-1] at 5.)

Plaintiffs in response defend the sufficiency of their pleading and contend that they have adequately stated claims for breach of express warranty, negligent misrepresentation, and for a violation of the NJCFA. Plaintiffs contends that CPG's argument regarding class allegations is premature and meritless.

The Court will address CPG's arguments as to each of Plaintiffs' remaining claims in turn before considering CPG's request to strike class allegations.

## A.   Breach of express warranty

Under New Jersey law, "to state a claim for breach of express warranty, [a plaintiff] must properly allege: (1) that [the defendant] made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007); Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 324 (D.N.J. 2014) (quotation omitted).

Plaintiffs assert that Defendants breached two distinct express warranties: 1) the express written Limited Warranty; and 2) specific, written marketing statements concerning the XLM product's reliability, longevity and appearance.

### 1.   Limited Warranty

The Court first addresses Plaintiffs' express warranty claim based on the Limited Warranty. Plaintiffs contend that Defendants breached this warranty when the XLM decking installed at their Margate, New Jersey property began to discolor and fade and Defendants failed to cure the problem. CPG argues that

10

discoloration, fading and splotching are not covered by the warranty and are in fact explicitly excluded from warranty coverage. The Court agrees.

Because this aspect of Plaintiffs' breach of express warranty claim is based on the language of the Limited Warranty, which is only partially quoted in the Complaint, the Court has considered the entire document as provided by CPG in connection with the instant motion.[3] The Limited Warranty provides that the XLM decking "will not check, split, splinter, rot or suffer structural damage from termites or fungal decay." (Compl. ¶ 20.) CPG properly notes, however, that the Limited Warranty expressly excludes certain defects from coverage:

> TimberTech does not warrant against and is not responsible for, and no implied warranty shall be deemed to cover, any product failure, product malfunction, or damages attributed to . . . (5) variations or changes in color of TimberTech Products; (6) normal weathering due to exposure to sunlight, weather and atmosphere which can cause colored surfaces to . . . stain[].

(Davis Decl. Ex. 1 [Docket Item 9-3]; see also Def. Br. at 5-6.)

---

[3] Generally, the court may only consider the allegations in the complaint when deciding a motion under Rule 12(b)(6). Pryor v. Nat'l Collegiate Athletic Ass'n., 288 F.3d 548, 560 (3d Cir. 2002). However, a document whose contents are alleged in the complaint and "whose authenticity no party questions, but which [is] not physically attached to the pleading, may be considered." Id. Further, the court may consider documents that the defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and central to plaintiff's claim. Id.

Plaintiffs' express warranty claim is premised on a supposed defect in the XLM decking which causes the product to discolor, splotch, and/or fade soon after installation. See, e.g., Compl. ¶ 1 ("XLM decking product is prone . . . to major discoloration and failure in its finish."); Id. ¶ 3 (same); Id. ¶ 16 (alleging that PVC "was defective and did not, among other things, retain its color."); Id. ¶¶ 26-27 (discussing consumer complaints regarding "discoloration and fading"); Id. ¶ 42 (describing photos which purportedly "depict the discoloration and fading" in Plaintiffs' decking). This is the type of defect expressly excluded from coverage under the Limited Warranty. Plaintiffs do not allege a defect which caused the decking to "check, split, splinter, rot or suffer structural damage from termites or fungal decay." It is therefore clear that Plaintiffs cannot maintain a breach of express warranty claim based on the alleged discoloration and fading of the XLM decking, and this aspect of their claim must be dismissed.

The Court's finding is consistent with In re AZEK Bldg. Products, Inc., Mktg. & Sales Practices Litig., Civ. 12-6627, 2015 WL 410564, at *4 (D.N.J. Jan. 30, 2015), in which Judge Arleo confronted strikingly similar allegations regarding discoloration of defendants decking products. See

12

Id. at *1 ("Plaintiffs claim that polyvinyl chloride (PVC), from which Defendant's decking products are made, develops stains, scratches, discoloration, chalking, and streaking under normal use."). In In re AZEK, the court dismissed plaintiffs' express warranty claim based on the written limited warranty because, as here, plaintiffs failed to allege a defect that was actually covered by the terms of the limited warranty. Id. at *4. Plaintiffs have provided no factual or legal basis to distinguish this case from In re AZEK.[4] Therefore, the Court will grant CPG's motion to dismiss Plaintiffs' breach of express warranty claim to the extent it is based on an alleged breach of the Limited Warranty.

### 2. Misrepresentations

The Court turns to the second basis for Plaintiffs' breach of express warranty claim: Defendants' alleged marketing statements. The New Jersey U.C.C. provides that express warranties are created through "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the

---

[4] In fact, Plaintiffs provide no argument in their opposition brief to support their express warranty claim based on the Limited Warranty. Plaintiffs only argue that this claim should proceed based on Defendants' marketing statements about the XLM product. It thus appears that Plaintiffs have abandoned the Limited Warranty as a basis for their breach of express warranty claim.

goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.J.S.A. § 12A:2-313(1)(a). No specific language or intent is necessary to create an express warranty. Id. See also Cipollone v. Liggett Grp., Inc., 893 F.2d 541, 574 (3d Cir. 1990), aff'd in part, rev'd in part, 505 U.S. 504 (1992). Ultimately, the question of whether a particular representation made by the seller amounts to an express warranty, as opposed to mere puffery, is normally a question for the trier of fact. See Gladden v. Cadillac Motor Car Division, 83 N.J. 320, 325 (1980); Dzielak, 26 F. Supp. 3d at 324. "Representations are presumed to be part of the basis of the bargain once the buyer becomes aware of the affirmations, absent clear affirmative proof that the buyer knew the promise or fact was untrue." In re AZEK, 2015 WL 410564, at *4 (citing Liberty Lincoln–Mercury, 171 F.3d, 818 825 (3d Cir. 1999)); Viking Yacht Co. v. Composites One LLC, 496 F. Supp. 2d 462, 469 (D.N.J. 2007)).

Because affirmations of fact about which buyers are aware are presumed to be part of the basis of the bargain unless defendant shows that the buyer knew the affirmation was untrue, the Court rejects CPG's argument that Plaintiffs have not adequately alleged that Defendants' representations in marketing and advertisements became the basis of the bargain. Cipollone v. Liggett Grp., Inc., 893 F.2d 541, 567-68 (3d Cir. 1990), aff'd

14

in part, rev'd in part, 505 U.S. 504 (1992) (noting that proof that plaintiff "read, heard, saw or knew of the advertisement containing the affirmation of fact or promise" is sufficient to "make it part of the basis of the bargain"). See also Viking Yacht, 496 F. Supp. 2d at 470. Plaintiffs have alleged that they were exposed to specific affirmations of fact in product brochures, videos and internet marketing. Plaintiffs provide examples of such affirmations including that the XLM decking is "designed to withstand the elements [so] you're not going to have to do the traditional painting and staining you would with a traditional wood deck."[5] (Compl. ¶ 32.) This type of statement about the quality of the product at issue is sufficient to create an express warranty and CPG has not argued that Plaintiffs knew it to be untrue. Plaintiffs' allegations are thus adequate to establish an express warranty based on Defendants' marketing claims about the XLM decking.

The Court likewise rejects CPG's argument regarding reliance. As noted above, Plaintiffs' have identified specific

---

[5] CPG argues that Plaintiffs cannot assert a breach of express warranty claim based on this statement because they have not alleged that they were required to paint or stain the product at issue as they would a traditional wood deck. Plaintiffs clearly allege that the XLM decking was defective due to premature discoloration and fading. The only remedy Defendants offered in response to Plaintiffs' complaints about this alleged defect was a treatment solution. It is thus reasonable to infer that Defendants' affirmation that ordinary painting and staining would not be required was false.

15

marketing statements which induced them to purchase and install the XLM product in their Margate home. Plaintiffs expressly allege that they and their contractor considered several decking products and decided to purchase and install XLM due to its "purported superior weathering and low maintenance properties." (Id. ¶¶ 39, 40.) Plaintiffs further allege that they relied on these statements when purchasing XLM decking and that they would not have purchased the product, paid a premium price, or installed it in their property if they knew about the deficiencies in the XLM product prior to purchase. (Id. ¶¶ 36-38.) Therefore, Plaintiffs have adequately pleaded a breach of express warranty claim based on Defendants' representations in marketing and advertising that the XLM decking would not discolor or fade.[6]

CPG also argues that the Limited Warranty expressly disclaims all other warranties, including any other express warranties.[7] Plaintiffs maintain in response that this purported

---

[6] The Court also finds such allegations sufficient to plead causation.

[7] To be valid and enforceable, "[d]isclaimers of express warranties must be 'clear and conspicuous.'" Viking Yacht, 496 F. Supp. 2d at 470 (quoting Gladden v. Cadillac Motor Car Div., 83 N.J. 320, 331 (1980)). Plaintiffs do not argue that the purported disclaimer was not clear and conspicuous. Indeed, the disclaimer in the Limited Warranty is written in bold, capital letters and appears in its own paragraph:

    EXCEPT FOR (1) THE EXPRESS WRITTEN WARRANTY CONTAINED
    HEREIN, AND, (2) THE 25 YEAR LIMITIED RESIDENTIAL FADE
    AND STAIN WARRANTY APPLICABLE TO EARTHWOOD EVOLUTIONS

disclaimer is inoperative because Defendants' marketing claims were inconsistent with the terms of the Limited Warranty. Generally, complete exclusion of express warranties is strongly disfavored under the U.C.C. See N.J.S.A. 12A:2-313, Cmt. 4; see also Gladden v. Cadillac Motor Car Div., Gen. Motors Corp., 83 N.J. 320, 330 (1980). Therefore, exclusions or limitations "engrafted upon express warranties [are] inoperative to the extent its terms are unreasonably inconsistent with the express warranties that are given." Gladden, 83 N.J. at 330; see also Viking Yacht, 496 F. Supp. 2d at 470; N.J.S.A. 12A:2-316(1). In the present action, Defendants' alleged marketing statement that buyers would not "have to do the traditional painting and staining you would with a traditional wood deck" appears inconsistent with the terms of the Limited Warranty which excludes from coverage "variations or changes in color of TimberTech Products" and "normal weathering due to exposure to sunlight, weather and atmosphere which can cause colored

---

DECKING ONLY . . . TIMBERTECH MAKES NO OTHER WARRANTIES, GUARANTEES OR INDEMNITIES, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, COURSE OF DEALING, USAGE OF TRADE, CUSTOM OR OTHERWISE, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTY OF MECHANTABLITY AND IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, AND ALL SUCH OTHER WARRANTIES, GUARANTEES AND INDEMNITIES ARE HEREBY DISCLAIMED, OVERRIDDEN AND EXLUDED FROM THIS TRANSACTION FOR THE WARRANTY TERM AND BEYOND THE WARRANTY TERM.
(Davis Decl. Ex. 1.) Accordingly, the Court finds no basis to question the validity of the disclaimer based on the manner in which it was presented to consumers.

17

surfaces to . . . stain[]." (Davis Decl. Ex. 1.) This apparent inconsistency renders the disclaimer in the Limited Warranty inoperative and cannot be a basis to dismiss Plaintiffs' breach of express warranty claim. Consequently, the Court will deny CPG's motion to the extent it seeks dismissal in this regard.[8]

**B.   Negligent misrepresentation**

Under New Jersey law, "[a] cause of action for negligent misrepresentation may exist when a party negligently provides false information." Karu v. Feldman, 119 N.J. 135, 146 (1990). To prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied. Green v. Morgan Properties, 215 N.J. 431, 457 (2013); H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 334 (1983). A negligent misrepresentation claim may also be based on an omission where plaintiff adequately pleads a duty to disclose.[9] S. Broward Hosp. Dist. v. MedQuist Inc., 516 F. Supp. 2d 370, 397 (D.N.J.), aff'd in part,

---

[8] Neither case cited by CPG addressed inconsistency between the terms of a written warranty and affirmations of fact made in marketing and advertising materials. See Advanced Drainage Sys., Inc. v. SiteCo Materials, Inc., Civ. 13-1349 (JAP), 2014 WL 1092809, at *4 (D.N.J. Mar. 18, 2014); Moulton v. LG Electronics USA, Inc., Civ. 11-4073 (JLL), 2012 WL 3598760, at *2 (D.N.J. Aug. 21, 2012).

[9] Under New Jersey law, a duty to disclose arises: "(1) when there is a fiduciary relationship between the parties; (2) when the transaction is intrinsically fiduciary, and calls for food faith and full disclosure; and (3) and when one party expressly places a special trust or confidence in the other." Id.

258 F. App'x 466 (3d Cir. 2007). See also Henderson v. Volvo Cars of N. Am., LLC, Civ. 09-4146 (DMC), 2010 WL 2925913, at *11 (D.N.J. July 21, 2010) ("A plaintiff may not bring an omission-based claim unless the breaching party owes him or her an independent duty imposed by law" requiring disclose.") (quotation and alterations omitted). CPG argues that Plaintiffs have not identified any statements beyond mere puffery, that Plaintiffs have failed to plead reliance, and that Plaintiffs have failed to establish a fiduciary relationship between the parties as required for an omission-based claim.

Many of the marketing statements that Plaintiffs identify in the Complaint are mere puffery. "Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir. 1993). "[S]tatements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P., 940 F. Supp. 2d 141, 159 (D.N.J. 2013) (citation omitted). "Puffery is distinguishable from misdescriptions or false representations of specific characteristics of a product" and "[a]s such, it is not actionable." Castrol, 987 F.2d at 945. Under New Jersey law, statements of puffery are "simply . . . not statements of fact." New Jersey Citizen Action v. Schering-Plough Corp., 367 N.J.

Super. 8, 14 (App. Div. 2003). Of the statements quoted in the

Complaint, only two can be construed as assurances of fact: 1)

"designed to withstand the elements [so] you're not going to

have to do the traditional painting and staining you would with

a traditional wood deck;" and 2) "designed to not rot, wrap or

splinter and contain a 25-year warranty." (Compl. ¶ 32.)[10] In

light of the allegations in the Complaint regarding premature

discoloration and/or fading in the XLM product, Plaintiffs have

alleged a plausible negligent misrepresentation claim based on

these two alleged marketing statements.[11] The Court will deny

---

[10] In contrast, the Court finds the other alleged marketing
statements quoted in the Complaint to be puffery as a matter of
law. See Deepstar Marine, Inc. v. Xylem Dewatering Solutions,
Inc., Civ. 12-7628 (JBS), 2014 WL 3778620, at *9 (D.N.J. July
30, 2014). These other statements consist merely of broad, non-
specific assertions regarding the XLM product's quality and
durability: "designed to provide years of low-maintenance use
and enjoyment;" "dependable and attractive for years . . . ;"
"years of outdoor living pleasure;" "less work more life;" and
"get the same consistent, high-quality board-to-board." (Id. ¶
32.) Such vague, subjective statements are not actionable. See
In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig., Civ.
08-939 (DRD), 2009 WL 2940081, at *9 (D.N.J. Sept. 11, 2009)
(finding representations that "HD DVD offered the best of high-
definition television and DVD" and that "HD DVD was a format for
today, tomorrow and beyond" to be non-actionable puffery). As
such, they cannot form a basis for Plaintiffs' negligent
misrepresentation claim.
[11] As discussed above, the Court finds that Plaintiffs have
adequately alleged that they reasonably relied on these
marketing statements. (Compl. ¶¶ 36-38.) The Court also rejects
CPG's contention that Plaintiffs have not pleaded reliance with
requisite particularity. See Marrin v. Capital Health Sys.,
Inc., Civ. 14-2558 (FLW), 2015 WL 404783, at *9 (D.N.J. Jan. 29,
2015) (explaining that Rule 9(b) applies to negligent
misrepresentation claims that sound in fraud as opposed to

20

CPG's motion to dismiss to the extent it seeks dismissal of Plaintiffs' negligent misrepresentation claim based thereon.

The Court agrees with CPG that Plaintiffs have failed to allege a fiduciary relationship as required to assert an omission-based negligent misrepresentation claim. Courts in this District have dismissed omission-based negligent misrepresentation claims where plaintiffs failed to allege a fiduciary duty between a remote manufacturer and product purchasers or that plaintiffs reposed special trust in defendant prior to purchase. Henderson v. Volvo Cars of N. Am., LLC, Civ. 09-4146 (DMC), 2010 WL 2925913, at *12 (D.N.J. July 21, 2010); Alin v. Am. Honda Motor Co., Civ. 08-4825 (KSH), 2010 WL 1372308, at *14 (D.N.J. Mar. 31, 2010). See also Green v. G.M.C., 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10, 2003). Plaintiffs only argue that they relied on Defendants' marketing statements regarding the XLM product and that Defendants had knowledge of a latent defect which they should have disclosed to consumers. Plaintiffs provide no authority establishing a duty to disclose based on the allegations in the Complaint. Therefore, the Court will dismiss without prejudice

---

negligence). Even under Rule 9(b)'s heightened pleading standard, the Court finds that Plaintiffs have sufficiently alleged that they and their contractor researched various competing products and purchased the XLM product in reliance on Defendants' marketing statements specifically recounted in the Complaint.

Plaintiffs' negligent misrepresentation claim to the extent it is based on a failure to disclose a defect in the XLM product.

   **C.   New Jersey Consumer Fraud Act**

   The Court will dismiss Plaintiffs' claim under the New Jersey Consumer Fraud Act for failure to adequately allege ascertainable loss. As this Court recently observed, "a plaintiff states a claim for damages under the [NJCFA] based on a benefit-of-the-bargain theory if he or she alleges (1) a reasonable belief about the product induced by a misrepresentation; and (2) that the difference in value between the product promised and the one received can be reasonably quantified. Courts in this District have required plaintiffs to specify the price paid for the product and the price of comparable products to adequately state a claim under the NJCFA." In re Riddell Concussion Reduction Litig., 77 F. Supp. 3d 422 (D.N.J. 2015) (citations omitted) (collecting cases). As in Riddell prior to the filing of plaintiffs' amended pleading, Plaintiffs in the present action merely allege that they paid a "price premium" for the XLM decking and fail to state the price they paid for the product at issue or any other facts necessary to plead ascertainable loss. Id. Consequently, the Court will dismiss Plaintiffs' NJCFA claim without prejudice.[12]

---

[12] Because the Court finds that Plaintiffs have not sufficiently pleaded ascertainable loss, the Court need not address CPG's

**D.   Declaratory relief**

CPG also seeks dismissal of Plaintiffs' claim for declaratory relief. CPG argues that such a claim must be dismissed because it is derivative of Plaintiffs' other claims which it contends fail as a matter of law. Moreover, CPG states that there is no independent cause of action for declaratory relief under New Jersey law. CPG's argument is meritless and inapposite because the Court will permit Plaintiffs' express warranty and negligent misrepresentation claims to proceed at this time. Moreover, "[t]he Court will consider appropriate relief only when liability is established." In re Riddell Concussion Reduction Litig., Civ. 13-7585 (JBS/JS), 2015 WL 4640425, at *16 (D.N.J. Aug. 3, 2015). Therefore, CPG's motion will be denied to the extent it seeks dismissal of Plaintiffs' claim for declaratory relief.[13]

**E.   Motion to strike class allegations**

In the instant motion, CPG requests that the Court strike the class allegations in the Complaint because the putative class is not ascertainable and implicates complex choice of law issues.

---

other arguments under the NJCFA regarding unlawful conduct and causation.

[13] To the extent Plaintiffs prefer to amend their pleading to include declaratory judgment as a requested form of relief as opposed to a separate count, such leave is granted.

23

"Generally courts do not consider whether a proposed class meets the Fed. R. Civ. P. 23 class requirements until after plaintiffs move for class certification." Luppino v. Mercedes-Benz USA, LLC, Civ. 09-5582 (DMC/JBC), 2013 WL 6047556, at *3 (D.N.J. Nov. 12, 2013) (citation omitted). See also Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72, 93 (3d Cir. 2011) (noting that determining whether the requirements of Rule 23 have been satisfied requires "rigorous analysis" and "[i]n most cases, some level of discovery is essential to such an evaluation"). In certain rare cases, however, the court may grant a motion to strike or dismiss class allegations prior to discovery "where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." Id. at 93 n.30. See also Forst v. Live Nation Entm't Inc., Civ. 14-2452, 2015 WL 858314, at *5 (D.N.J. Feb. 27, 2015).

CPG's argument regarding ascertainability is premature and rests on unsupported assertions well-beyond the four corners of the Complaint.[14] For example, CPG, without citation, contends

---

[14] Plaintiffs propose the following class definition:
All persons and entities that own a commercial or residential property located within New Jersey that has a deck or structure constructed with XLM decking installed on or after January 1, 1996, as well as any individual or entity that paid for or performed repairs of damage caused by the failure of the installed XLM Decking due to discoloration, splotching or fading of the decking. In addition, the proposed class includes, without limitation, all such persons or entities who were denied or partially denied warranty coverage for

24

that it does not have sufficient records to determine class membership, nor would any other entity. The Court has no basis to accept or reject CPG's argument regarding the availability of such records. Ultimately, Plaintiffs will bear the burden of demonstrating that class membership is ascertainable; one cannot determine, upon the present pleadings, whether receipts or records or other means exist (or for which some reasonable substitute can be found) to identify class members. Consequently, the question of ascertainability is more appropriately addressed upon a developed factual record after class discovery. See Luppino, 2013 WL 6047556, at *7; In re Paulsboro Derailment Cases, Civ. 12-7586 (RBK/KMW), 2014 WL 1371712, at *6 (D.N.J. Apr. 8, 2014); McPeak v. S-L Distribution Co., Civ. 12-348 (RBK/KMW), 2014 WL 4388562, at *10 (D.N.J. Sept. 5, 2014).

The Court also finds CPG's choice of law argument premature. While courts are generally wary of nationwide classes due to choice of law issues, among other reasons, Plaintiffs' proposed class here is tailored to owners of commercial or residential property located in New Jersey. See Kalow &

---

failure of the XLM decking based on a claim that the discoloration, splotching or fading of the decking, [sic] was not covered by the warranty or that other alleged warranty limitations applied.
(Compl. ¶ 45.)

Springut, LLP v. Commence Corp., 272 F.R.D. 397, 409 (D.N.J.
2011) ("[T]he United States Supreme Court has stated that the
Court may not take a transaction with little or no relationship
to the forum and apply the law of the forum in order to satisfy
the procedural requirement that there be a common question of
law.") (quotation omitted); Ford Motor Co. Ignition Switch
Products Liab. Litig., 174 F.R.D. 332, 348 (D.N.J. 1997) ("Since
the laws of each of the fifty states vary on important issues
that are relevant to plaintiffs' causes of action and
defendants' defenses, the court cannot conclude that there would
be no conflict in applying the law of a single jurisdiction,
whether it be Michigan, or New Jersey, as the plaintiffs
suggest."). By narrowing the class to New Jersey real
properties, it is likely that New Jersey will have a substantial
connection to the claims in this litigation, regardless of
whether the class members are citizens of another state. Even if
after a choice of law analysis it is necessary to apply the laws
of multiple states to Plaintiffs' claims, the class may be
divided into geographic or other subclasses to facilitate
adjudication of this case as a class action. See Ford Motor Co.
Ignition Switch Products Liab. Litig., 174 F.R.D. at 355 ("Even
though these actions cannot be certified as proposed, the court
has made suggestions for dividing the class into geographic and
model/year subclasses, if feasible."). Moreover, the named

Plaintiffs are citizens of Pennsylvania who own property in Margate, New Jersey. The only choice of law analysis possible at this time would be a comparison of Pennsylvania and New Jersey law as to Plaintiffs' claims for breach of express warranty, negligent misrepresentation, and declaratory relief. Such an analysis would be premature at this time because the Court will permit Plaintiffs to file an amended complaint curing the deficiencies identified above and it is not yet clear what claims will ultimately proceed. Therefore, the Court will deny CPG's motion to strike Plaintiffs' class allegations due to any purported ascertainability or choice of law issues inherent in Plaintiffs' proposed class definition without prejudice to renewing these arguments at an appropriate time.

**V.   CONCLUSION**

For the above reasons, the Court will grant in part and deny in part CPG's motion to dismiss. The Court will grant CPG's motion to the extent it seeks dismissal of Plaintiffs' breach of express warranty claim based on the Limited Warranty, Plaintiffs' negligent misrepresentation claim based on an omission, and Plaintiffs' NJCFA claim. Because the Court cannot conclude that amendment would be futile, dismissal will be without prejudice to Plaintiffs' right to file an amended pleading curing the identified deficiencies within twenty-one (21) days. The Court will permit the following claims to proceed

at this time: Plaintiffs' breach of express warranty claim based on certain of Defendants' marketing claims; Plaintiffs' negligent misrepresentation claim based on certain of Defendants' marketing statements; and Plaintiffs' claim for declaratory relief. The Court will deny as premature CPG's motion to strike class allegations. An accompanying Order will be entered.


**August 26, 2015**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        Chief U.S. District Judge