**Cohen, Placitella & Roth, P.C.**
Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
Michael Coren, Esq. (NJ Atty #: 024871979)
Jared M. Placitella, Esq. (NJ Atty #: 068272013)
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003
**Attorneys for Plaintiffs and the Class**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOHN M. PERUTO AND LORI A. PERUTO,** Husband and Wife as representatives of others similarly situated**,**<br><br>Plaintiffs,<br><br>vs.<br><br>**TIMBERTECH Ltd. and CPG INTERNATIONAL LLC.,**<br><br>Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>CIVIL ACTION NO. 15-2166 (JBS/JS)<br><br>**AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiffs John M. Peruto and Lori A. Peruto ("Plaintiffs") by way of amended class action complaint on behalf of themselves and all others similarly situated, against TimberTech Ltd. and CPG International LLC, jointly, severally and in the alternative (hereinafter "Defendants"), state as follows:

## INTRODUCTION

1.      This is a consumer action on behalf of Plaintiffs and a class of other similarly situated New Jersey consumers against Defendants, the manufacturers and warrantors of the TimberTech XLM decking product line ("TimberTech Decking", or "XLM"), which is designed, marketed, and sold as a premium low maintenance decking product line alternative to traditional wooden decking materials.  This XLM Decking product is prone and subject to major

discoloration and failure in its finish, causing damage to homes, commercial establishments and other properties following installation.  As a result of Defendants' failure to properly design, develop, test, manufacture, distribute, market, sell, instruct, cure, remedy, recall and otherwise ensure that the TimberTech XLM Decking was made to an acceptable standard and consumer expectation, the TimberTech XLM Decking that Plaintiffs' and other class members' similarly situated purchased directly, or through their contractors or builders, discolored and is unacceptably fading, causing Plaintiffs and other consumers to suffer ascertainable damages and losses.

2.      TimberTech's marketing slogan is "Less work. More life."  Defendants accordingly represent, warrant, and advertise that XLM requires low or no maintenance and that XLM is long lasting.

3.      However, among other issues, the XLM Decking is prone to substantial discoloration and fading in a short amount of time following installation.  Despite its very expensive price tag, at or near the top of all TimberTech and other decking options due to its supposed durability and low maintenance, substantial problems occur soon after installation and then continue to exist unremedied by Defendants.

4.      Defendants purport to provide a 25-year warranty, but when called upon, refuse to honor their purported 25-year warranty because the discoloring failures are unilaterally deemed by them to not be a "defect."

5.      Defendants, on information and belief, were aware of the shortcomings in their XLM products prior to the time it sold them to Plaintiffs and other class members, but nonetheless continued to sell them anyway without disclosure.  Then, when the problems in the XLM's product finish manifested, denied any responsibility for the situation and further refused

and failed to make things right and consistent with their affirmations and representations of this premium priced deck product.

6.      Defendants are responsible and liable for, among other things, the costs of removing and replacing the XLM Decking installed in the homes, offices, buildings and other structures of Plaintiffs and members of the proposed class or, alternatively, the costs of maintaining and treating the decking over its expected useful life, as well as other related consequential damages that resulted from the defective decking that has failed.

## PARTIES

7.      Plaintiffs John M. Peruto and Lori A. Peruto (Plaintiffs) are citizens of the Commonwealth of Pennsylvania, residing at 7003 Dorsam Way, Ambler, Pennsylvania 19002. Plaintiffs also own and maintain a second residence in Margate City, New Jersey located at 445 North Thurlow Ave, Margate, NJ 08402.  This Margate property has an outdoor deck constructed with Defendants' TimberTech XLM, which deck experienced the discoloration and fading problem soon after installation that is the subject of this litigation.

8.      Defendant TimberTech is incorporated in Delaware and maintains its headquarters at 894 Prairie Avenue in Wilmington, Ohio.  This company is a manufacturer of purported premium grade decking materials for residential and commercial markets designed to replace wood, metal and other traditional materials in a variety of building applications for sale in New Jersey and other states nationwide.  The company regularly and continuously transacts and conducts substantial business in New Jersey as well as throughout the United States.  The company is owned and controlled by CPG International, who makes all decisions for this company, including all decisions on XLM warranty matters.

3

9.      Defendant CPG International ("CPG") is a Delaware corporation headquartered in Scranton, Pennsylvania.  CPG is a manufacturer of materials for residential and commercial markets designed to replace wood, metal, and other traditional materials in a variety of building applications for sale in New Jersey and nationwide.  CPG bills itself on its website as "a manufacturer of market leading brands of highly engineered building materials for residential and commercial markets designed to replace wood, metal and other traditional materials in a variety of building applications."  CPG regularly and continuously conducts substantial business in New Jersey as well as states throughout the United States.

10.      CPG International Inc. acquired TimberTech in or about August 2012 and since that time controls all aspects of TimberTech's business and affairs, including TimberTech's policies on and fulfilment of warranty claims.  Upon information and belief, CPG International Inc. has assumed all debts and liabilities of TimberTech and is the product line successor to TimberTech's product lines, including its XLM decking product line.

## JURISDICTION AND VENUE

11.      Defendants have removed this matter to this Court claiming jurisdiction exists under the Class Action Fairness Act and 28 U.S.C. §1332.

12.      Venue is proper in this Court because the events or omissions giving rise to Plaintiffs' claims occurred in the vicinage of this Court and Defendants are subject to personal jurisdiction in this State.

## FACTUAL ALLEGATIONS

13.      Upon information and belief, Defendants are, and at all times relevant hereto were, engaged in the business of designing, developing, manufacturing, distributing, marketing, and selling decks and other deck-related materials in New Jersey.

4

14.     Defendant TimberTech in the past, and now CPG, manufactures, advertises, sells and distributes the XLM Decking, and has done so since approximately 1996.

15.     The XLM Decking was touted by the manufacturer and its sales representatives and agents as being easier to install, easier to maintain, and longer-lasting than wooden or other composite decking.  These attributes were used as a basis to charge a premium for the XLM Decking compared with traditional wood, pressure treated wood decking, as well as other composite and plastic decking alternative products.

16.     Plaintiffs and members of the proposed class paid a premium price for the XLM product lines, which, when tendered and installed, did not conform to its claimed attributes and qualities, thereby causing Plaintiffs and members of the proposed class to sustain ascertainable losses and injuries.

17.      Plaintiffs, for example, paid between $45.60 to $56.00 per 5/4" x 6" x 16' board for TimberTech XLM Decking depending on date, manner and/or quantity purchased when at the same time standard-treated wood decking would have cost approximately $9.00 for the same size board; a premium of over five (5) to six (6) times based upon the price paid for the TimberTech boards.  Accordingly, Plaintiffs have suffered ascertainable losses ranging between $36.60 to $47.00 on each of eighty-six (86) or so 5/4" x  6" x 16' decking boards purchased to complete their Margate, New Jersey home's deck.  Plaintiffs also purchased other lengths of TimberTech XLM boards to complete their deck and paid corresponding premium prices and suffered corresponding ascertainable losses as to those boards as well.

18.     Defendants were negligent in the design, testing, and manufacture of the XLM Decking in a number of ways, including the use of polyvinyl chloride ("PVC"), a major

component of the XLM Decking, that was defective and did not, among other things, retain its color.

19.     Defendants knew, or had reason to and should have known, that the PVC it used for fabricating the XLM Decking made it susceptible to premature failure by and through various processes which led to, among other things, substantial color deterioration.

20.     Defendants' design and materials choices, coupled with a lack of appropriate testing, have created a product that begins to fail on its first day of use, even if perfectly installed in its intended place and environment.

21.     Because of the defective design and manufacture, Defendants' decking failed in its intended purpose and failed to meet reasonable and foreseeable consumer expectations.

22.     Defendants' provided consumers, which include the home owner, a warranty expressly stating that:

> TimberTech Limited ("TimberTech") warrants to Purchaser that, for a period of twenty five (25) years (Residential) & ten (10) years (Commercial) from the date of the original purchase, residential or commercial as the case may be, (the "Term"), under normal use and service conditions, that: (1) **the decking Materials will be free from material defects in workmanship and materials,** and will not check, split, splinter, rot or suffer structural damage from termites or fungal decay; and (2) DrySpace will not peel, blister, pit, flake, crack or corrode as a result of manufacturing defects, or as a result of exposure to ocean air (salt spray).

(Emphasis supplied).

23.     Because of the defective design and manufacture, Defendants' XLM Decking is inherently defective and substantially certain to fail within the 25-year express warranty provided by Defendants and/or the useful life of the XLM Decking.

24.     Defendants also knew that TimberTech Decking had a history of failures and was prone to premature wear and premature discoloration, yet Defendants failed and/or omitted to inform their distributors, their customers and the eventual owners of the product of these material issues.

25.     Despite knowing of these defects in TimberTech Decking, Defendants have not developed a workable solution to rectify or cure the problem in the materials.  Defendants' purported fix to the problem in their product is for the consumer to apply a treatment coating, which according to the treatment's manufacturer must be applied periodically, thereby completely negating TimberTech XLM's purported no-maintenance or treatment quality and virtue for which it commanded a premium price over standard pressure treated decking.

26.     Defendants had knowledge of these shortcomings in its XLM Decking product but continued to nonetheless sell it to consumers such as Plaintiffs at a premium price without informing them beforehand, as well as informing downstream vendors or contractors, of the quality and color stability issues that existed in the XLM product line.

27.     Persons or entities that own the XLM Decking installed in New Jersey properties, including Plaintiffs, have already experienced failures or own decking which is in the process of failing prematurely and, thus, have suffered or are reasonably certain to suffer actual injury, and ascertainable losses, well in advance of the warranted or expected life of their decks.

28.     Despite numerous customer complaints over a period of years, Defendants failed to implement any changes to their XLM decking, marketing, or warranty procedures to remedy these defects.  Indeed, Defendants systematically and routinely offer no permanent fix or solution of the discoloration problem in response to consumer complaints about discoloration and fading.

29.     The Internet is replete with examples of angry consumers who paid top dollar for TimberTech XLM and are furious about its performance.  There are many posts online showing XLM product consumers' dissatisfaction has developed over the product's fading and discoloration as well as Defendants failure to address the situations under its warranties.

**Inadequate Testing of TimberTech XLM Decking**

30.     Defendants did not properly test the XLM Decking in their anticipated environments before selling the decking to the public.

31.     Defendants conducted inadequate testing on the XLM Decking and failed to test for things that they knew or should have known would lead to premature failure of the decking.

32.     Defendants failed to investigate or test whether well-known and expected environmental conditions would, among other things, lead to substantial premature discoloration in the XLM Decking.

**False Advertising of TimberTech XLM Decking**

33.     Defendants falsely marketed or advertised, including in its product brochures, videos, and internet marketing that the XLM Decking was reliable, despite failing to adequately test and determine the reliability of their product when used in real world environmental conditions.  Defendants held out their XLM decking product as having minimal maintenance requirements and excellent reliability, and charged a premium price (as described above) compared to alternative decking materials based upon these purported attributes and qualities.

34.     Among other false and inaccurate representations regarding its XLM decking product, Defendants falsely advertised and represented that the XLM Decking was "designed to provide years of low-maintenance use and enjoyment"; would be "dependable and attractive for years…"; and would provide "years of outdoor living pleasure."  Defendants further described the XLM products as involving "less work and more life" and that TimberTech decking is "designed to withstand the elements [so] you're not going to have to do the traditional painting and staining you would with a traditional wood deck."  Defendants also represented to consumers that TimberTech manufactures all of its planks, so the customer "is going to get the

8

same consistent, high-quality board-to-board," and that TimberTech boards are "designed to not rot, warp or splinter and contain a 25-year warranty."

35.     Defendants and their authorized agents and distributors made each of the above described assertions, statements, representations and warranties with the intent and purpose of inducing builders and consumers to purchase and install the XLM Decking in or on properties in New Jersey and elsewhere.

36.     Defendants also made numerous material omissions in their literature and uniformly withheld important information relating to the design, reliability, and performance of the XLM Decking, including that the product was prone to discoloration, blotching, and fading soon after being installed and subjected to the environment.

37.     Defendants were made aware of the deficiency and defectives in the XLM Decking by numerous dissatisfied consumers, including Plaintiffs, but have not rectified the problem, honored their warranty, or compensated them for their injuries and losses.

38.     Had Defendants not withheld and omitted important information about the design, reliability, and performance of XLM Decking, Plaintiffs and the members of the Class would not have purchased the products, paid a premium price for the products, and/or installed them in their properties.

39.     Yet fraudulently induced by these material omissions and misrepresentations, Plaintiffs were deprived of the benefit-of-the-bargain by paying as much as six times more than standard-treated wood decking for TimberTech XLM Decking falsely promised to be maintenance-free.

40.    Plaintiffs were promised a maintenance-free TimberTech XLM decking product, for which, as explained above, they paid a premium price over standard treated wood decking products.

41.    As a further result of Defendants' fraudulent conduct, Plaintiffs and members of the Class have also suffered ascertainable out-of-pocket losses to maintain Defendants' defective product that was marketed to them as maintenance-free.

42.    Upon information and belief, Defendants' recommend that when defective color spots or blotch manifest following installation that their TimberTech XLM synthetic decking be treated with a product called Deck Max E2 PVC Revitalizer to abate or cure the defects of the decking described herein.

43.    Deck Max E2 PVC Revitalizer costs $94.95 per gallon and covers roughly 500 square feet of decking.  The manufacturer of Deck Max E2 Revitalizer recommends that the product be applied annually for best results.  *See* www.deckmax.com/shop/deckmax-e2/.

44.    Accordingly, based upon the size of their Margate home's deck Plaintiffs have suffered, and will continue to suffer, out-of-pocket losses in the amount of approximately $2,300 annually or so for materials and labor to treat and maintain their defective TimberTech XLM deck.

45.    Members of the class have suffered and will continue to suffer similar out-of-pocket losses as a result of Defendants' material omissions and misrepresentations, the precise amount of which will depend on the square footage area of their decking, among other common but computable factors.

46.    Defendants knew that Plaintiffs, Plaintiffs' builder, and/or Plaintiffs' agents, as well as Class Members, Class Members' builders, contractors, subcontractors, and/or agents,

10

would rely upon Defendants' representations, marketing and warranties regarding the quality of TimberTech Decking.

47.     Plaintiffs, Plaintiffs' builder, and/or agents, as well as Class Members, Class Members' builders, contractors, subcontractors, and/or agents, relied upon Defendants' representations, marketing and warranties when purchasing the TimberTech Decking.

**Plaintiffs' Purchase and Negative Experience with Defendants' XLM Decking**.

48.     Prior to purchasing Defendants' XLM Decking for installation in their Margate residence, which property is located nearby the Atlantic Ocean and other bodies of salt water, Plaintiffs and their contractor researched decking products and selected XLM due to its purported superior weathering and low maintenance properties, for which a premium price (as described above) was commanded.  The superior properties were set out and touted in sales materials and internet presentations created and disseminated by Defendants.

49.     Plaintiffs' in a series of purchases during 2012, beginning on or about May 14, 2012 and continuing through September 25, 2012, purchased XLM Sandridge decking and related TimberTech decking products for installation in their Margate residence through their contractor, J.P. Leeds, Jr. Builder Inc. ("**Leeds**") from 84 Lumber Company in Pleasantville (Egg Harbor), New Jersey.

50.     Within just a short period of time after the decking's final installation in their Margate residence, discoloration issues in the XLM product began to manifest.  Leeds promptly reported the defective situation to Defendants on its and Plaintiffs' behalf.

51.     The following pictures depict the discoloration and fading that has occurred in the XLM decking installed in Plaintiffs' Margate, New Jersey residence:

11



*Figure 1*



*Figure 2*

52.     Plaintiffs and their contractor, Leeds, have communicated with Defendants'
warranty claim representatives by phone and email regarding the problem with the XLM
Decking.  Plaintiffs have allowed Defendants to inspect the deck.  Defendants only offer and
remedy for the defective product was a treatment solution, one which Defendants would not
agree or warrant would remedy and permanently correct the problems with the XLM Decking.

53.     As explained above, the treatment does not cure the problem and will require
Plaintiffs and members of the Class to periodically incur substantial maintenance costs negating
the value for which premium prices (as described above) were paid for the TimberTech XLM
product.

54.     Prior to filing this suit, Plaintiffs in their own right and on behalf of the class
identified herein, served a written Uniform Commercial Code notice of breach of warranty and
non-conforming goods upon Defendants.

## CLASS ACTION ALLEGATIONS

55.     Plaintiffs seeks to bring this case as a class action, pursuant to Federal Rules of
Civil Procedure 23(a) and (b)(2) and (b)(3).  The proposed class (the "Class") is defined as
follows:

> All persons and entities that own a commercial or residential property
> located within New Jersey that has a deck or structure constructed with
> XLM Decking installed on or after January 1, 1996, as well as any
> individual or entity that paid for or performed repairs of damage caused by
> the failure of the installed XLM Decking due to discoloration, splotching or
> fading of the decking. In addition, the proposed class includes, without
> limitation, all such persons or entities who were denied or partially denied

13

warranty coverage for failure of the XLM Decking based on a claim that the

discoloration, splotching or fading of the decking, was not covered by the

warranty or that other alleged warranty limitations applied.

Expressly excluded from the class are: (a) the Judge(s) presiding over this action and members of

their families; (b) Defendants and any entity in which Defendants have a controlling interest, or

which has a controlling interest in Defendants, and its legal representatives, assigns and

successors; and (c) all persons who properly execute and file a timely request for exclusion from

the Class.

**Numerosity**

56.     Defendants have harmed and continue to harm the homes, offices, buildings and

other structures where XLM Decking is installed.  In addition to the many complaints of

consumers appearing on the internet, Plaintiffs' contractor is aware of other consumers in New

Jersey who experienced the XLM Decking discoloration, splotching and fading problem.  The

members of the proposed Class are so numerous that joinder of all members is impracticable.

The class is objectively ascertainable through sales records, warranty claims and/or inspection of

the product.

57.     The exact number of Class members is unknown as such information is in the

exclusive control of Defendants.  However, due to the nature of the trade and commerce

involved, Plaintiffs believe the Class consists of hundreds, if not thousands, of New Jersey

property owner consumers, making joinder of all Class members impracticable.

**Common Questions of Law and Fact**

58.     Common questions of law and fact affect the right of each Class member and

common relief by way of damages is sought for Plaintiffs and Class members.

14

59.     The harm that Defendants have caused or could cause is substantially uniform with respect to Class members.  Common questions of law and fact that affect the Class members include, but are not limited to:

a)   Whether Defendants sold and entered a defective product into the stream of commerce in New Jersey and other states;

b)   Whether Defendants with knowledge of the product's defects and shortcomings sold and entered a defective product into the stream of commerce in New Jersey and other states;

c)   Whether Defendants failed to prevent damages that occurred because of the defective product it designed, manufactured, inadequately tested, misleading marketed, and sold into the stream of commerce;

d)   Whether Defendants breached their express warranty and/or engaged in fraudulent, false, deceptive and/or misleading misconduct with respect to the handling of warranty claims based on the discoloration;

e)   Whether Defendants omitted material information when they advertised, marketed, and sold the XLM Decking;

f)   Whether Defendants violated the New Jersey Consumer Fraud Act entitling Plaintiffs and the Class to trebled damages, attorney fees, and costs;

g)   Whether the members of the Class have sustained damages and, if so, the proper measure of such damages;

h)   Whether it should be found and declared that the XLM Decking was defective and non-conforming and entitled to warranty replacements, with Defendants ordered to so notify consumers with the product at its expense; and

      i)    Whether Defendants should be enjoined from dishonoring and not fulfilling its warranty where and when a consumer timely complains of discoloration, splotching or fading of the XLM splotching as Defendants have consistently done in the past.

**Typicality**

60.    The claims and defenses of the representative Plaintiffs are typical of the claims and defenses of the Class.

**Adequacy of Representation**

61.    The representative Plaintiffs, will fairly and adequately assert and protect the interests of the Class:

      a)    They have hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class; and

      b)    They have no conflict of interest that will interfere with the maintenance of this class action.

**Superiority**

62.    A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

      a)    The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

      b)    The Class is so numerous as to make joinder impracticable.  However, the Class is not so numerous as to create manageability problems.  There are no unusual legal or factual issues that would create manageability problems;

c)  Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

d)  Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

e)  Upon information and belief, Defendants are responsible for the design and manufacture of the defective XLM Decking, which was used in New Jersey, making this forum appropriate for the litigation of the claims of the entire Class; and

f)  The claims of the individual Class members are relatively small in relation to the expenses of litigation, making a Class action the only procedure in which Class members can, as a practical matter, recover.  However, the claims of individual Class members are large enough to justify the expense and effort in maintaining a class action.

**<u>TOLLING OF ANY APPLICABLE STATUTES OF LIMITATIONS</u>**

63.     Plaintiffs and putative members of the Class are within the applicable statute of limitation for the claims presented here.  Defendants' failed to disclose this known but nonpublic information about the defective nature of their XLM Decking — information over which they had exclusive control.  Because Plaintiffs and Class members therefore could not reasonably have known that the decking was defective, Defendants are estopped from asserting any statute of limitation defenses that might otherwise be applicable to the claims asserted herein.

**Substantive Counts**

**COUNT I**[1]

**BREACH OF EXPRESS WARRANTY**
**(Brought against both Defendants on behalf of Plaintiffs and the Proposed Class)**

64.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Amended Class Action Complaint as though set forth fully herein.

65.     The XLM Decking sold, tendered, and delivered to Plaintiffs and members of the class failed to conform to Defendants' descriptions and affirmations of the XLM Decking's qualities, finish and attributes as set forth above in that while in normal and expected use of the decking the XLM Decking discolored, developed splotches and/or faded soon after being installed.  The discoloration, splotching and fading occurred in such time frame from date of installation that it was not the result of normal weathering.

66.     Defendants warranted the product to residential consumers in writing for 25-years, and commercial property consumers in writing for ten years, to be free from defects in materials from date of original purchase as set forth above.

67.     Defendants are in breach of their express warranty they provided to Plaintiffs and members of the class regarding the XLM product line in that the materials in the product tendered were not free of defects in materials and have, as a result, prematurely discolored and faded.

68.     Despite being notified of the breach of express warranty, Defendants have refused to honor the XLM Decking's warranty by replacing the defective decking without cost to Plaintiffs and members of the class similarly situated.

---

[1] Any re-allegation of a claim dismissed by the Court on Defendant CPG's motion to dismiss is solely for purposes of preserving Plaintiffs' appellate rights.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants, jointly, severally and in the alternative for compensatory damages, for the establishment of a common fund, interest, costs and for such other and further relief as this Court deems just and appropriate.

**COUNT II**
**NEGLIGENT MISREPRESENTATION**[2]
**(Brought against both Defendants on behalf of Plaintiffs and the Proposed Class)**

69.     Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Amended Class Action Complaint as though set forth fully herein.

70.     In making material misrepresentations of material facts regarding the characteristics and capabilities of XLM Decking through their advertising, marketing, and product information publications that were in fact untrue, Defendants knew or should have known they were misrepresenting material and that the Plaintiffs and Class would be relying on Defendants' representations to their detriment and damage.

71.     In concealing material facts regarding the characteristics and capabilities of XLM Decking, Defendants knew or should have known they were not disclosing material facts and that Plaintiffs and the Class would be relying on Defendants' representation to their detriment and damage.

72.     Plaintiffs and the Class were unaware of the falsity of Defendants' representations, and as a result, they, or their contractor intermediaries or their agents, justifiably relied upon them in purchasing or constructing a structure of XLM Decking.

---

[2] Any re-allegation of a claim dismissed by the Court on Defendant CPG's motion to dismiss is solely for purposes of preserving Plaintiffs' appellate rights.

73.     Defendants made the false representations in the course of their business with the intent that Plaintiffs and the Class would rely on them and purchase or construct structures using XLM Decking.

74.     As a direct, proximate and foreseeable result of Defendants' failure to fully disclose material facts and its misrepresentations of material facts, Plaintiffs and the proposed Class suffered damage.

75.     As a result of Defendants' misconduct, Plaintiffs and the Class have suffered actual damages in that they purchased defective XLM Decking and paid a premium price for same as described above.

76.     As a result of Defendants' misconduct, Plaintiffs and the Class have suffered damages and will in the future suffer damages that include not only the full cost to attempt to repair but, ultimately, to replace their XLM Decking.  Damages also include, without limitation, consequential and incidental damages.

77.     As a direct, proximate and foreseeable result of Defendants' negligent misrepresentations, Plaintiffs and the Class sustained damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants, jointly, severally and in the alternative for compensatory damages, for the establishment of a common fund, interest, costs and for such other and further relief as this Court deems just and appropriate.

## COUNT III

### VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT.
### (Brought against both Defendants on behalf of Plaintiffs and the
### Proposed Class for equitable and statutory remedies)

78.     Plaintiffs re-allege and incorporate by reference the allegations contained in all

preceding paragraphs of this Amended Class Action Complaint as though set forth fully herein.

79.     Plaintiffs and Defendants are "persons" within the meaning of N.J.S.A. §56:8-1.

80.     The New Jersey Consumer Fraud Act ("NJCFA") prohibits sellers of goods such

as Defendants from engaging in "any unconscionable commercial practice, deception fraud, false

pretense, false promise, misrepresentation, or the knowing concealment, suppression, or

omission of any material fact with intent that others rely upon such concealment, suppression or

omission, in connection with the sale or advertisement of any merchandise."  N.J.S.A. 56:8-2.

81.     The business activities of defendant set forth above constitutes the sale or

advertisement of merchandise within the meaning of the NJCFA.  N.J.S.A. 56:8-1.

82.     As alleged more fully herein, Defendants have violated N.J.S.A. 56:8-2 by selling

XLM Decking at a premium price with knowledge that it was defective and, as alleged herein, is

inconsistent with Defendants' representations about, among other things, durability and

maintenance requirements.  As such, their conduct violated the NJCFA.

83.     Defendants further sold the XLM Decking under a warranty that they did not

intend to honor.

84.     Defendants, without right or cause, have refused to honor the warranty for XLM

Decking in an effort to avoid the expense of same and have omitted to inform consumers making

warranty claims of the defects in the materials used to fabricate the XLM Decking.  Unless

restrained, Defendants will continue to do so.

85.     N.J.S.A. 56:8-2.2 provides "[t]he advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the act to which this act is a supplement."

86.     N.J.S.A. 56:8-2.11 provides that "[a]ny person violating the provisions of the NJCFA act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful."

87.     As a result of defendant's conduct in violation of the NJCFA, Plaintiffs and Class Members have suffered ascertainable losses as described above, and unless restrained, class members and others in the further will continue to suffer injury and harm.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendants, jointly, severally and in the alternative for statutory compensatory damages, statutory trebled damages, for an injunction restraining further violation of the Consumer Fraud Act, for attorney's fees and costs, and for the establishment of a common fund, interest and costs, and for such other and further relief as this Court deems just and appropriate.

<u>**COUNT IV:**</u>
<u>**DECLARATORY AND INJUNCTIVE RELIEF**</u>
<u>**(Brought against both Defendants on behalf of the proposed Class)**</u>

88.      Plaintiffs re-allege and incorporate by reference the allegations contained in all preceding paragraphs of this Amended Class Action Complaint as though set forth fully herein.

89.     Defendants acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

90.     Plaintiffs, on behalf of themselves and putative Class members, seek a Court declaration of the following:

a)  XLM Decking manufactured after January 1, 1996, until the present has defects which cause it to severely and prematurely degrade and discolor resulting in damage to deck structure and the necessity of the removal and replacement of the Decking or periodically applying a treatment to maintain the decking's appearance;

b)  XLM Decking manufactured after January 1, 1996, until the present has a defect in workmanship and material that causes failures;

c)  Defendants knew of the defects in XLM Decking and that any purported  limitation contained in the warranties was unenforceable;

d)  That Defendants should reassess all prior warranty claims on XLM Decking, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds and make proper warranty reparations and payments; and

e)  Defendants should establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether an XLM Decking failure is manifest and warranty claims honored and performed.

WHEREFORE, Plaintiffs pray for judgment on behalf of themselves and on behalf of the Class Members defined above, as follows:

a)  Enter an order certifying the proposed Class, designating Plaintiffs as the Class representative, and designating the undersigned as Class counsel;

b) Declare that Defendants are financially responsible for notifying all Class members of the problems with XLM Decking;

c) Declare that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits or premiums it received from the sale of XLM Decking, or order Defendants to make full restitution to Plaintiffs and the members of the Class;

d) Defendants shall re-audit and reassess all prior warranty claims regarding XLM Decking, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: September 16, 2015       Respectfully Submitted,

**COHEN, PLACITELLA & ROTH, P.C.**

_____ /JMP

Christopher M. Placitella, Esq. (NJ Atty #: 027781981)
cplacitella@cprlaw.com
Michael Coren, Esq. (NJ Atty #: 024871979)
mcoren@cprlaw.com
Jared M. Placitella, Esq  (NJ Atty #: 068272013)
jmplacitella@cprlaw.com
127 Maple Avenue
Red Bank, NJ 07701
(732) 747-9003
(732) 747-9004 (fax)
Attorneys for Plaintiffs and the Proposed Class